UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

LEANDRO JOSE ECHENIQUE DALPONTE,

Petitioner,

v.

PATRICK DIVVER, et al.,

Respondents.

Case No.: 26-CV-4549 JAO (BJW)

**ORDER GRANTING IN PART WRIT OF HABEAS CORPUS**

(ECF No. 1)

Before the Court is Petitioner Leandro Jose Echenique Dalponte's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (ECF No. 1). Also before the Court is Respondents Patrick Divver's (Field Office Director of Enforcement and Removal Operations, San Diego Field Office, Immigration and Customs Enforcement ("ICE")), Todd M. Lyons' (Acting Director, ICE), the United States Department of Homeland Security's ("DHS"), Markwayne Mullin's (Secretary of the DHS), Todd Blanche's (Attorney General of the United States), Executive Office for Immigration Review's, and Christopher J. LaRose's (Warden of Otay Mesa Detention Facility) (collectively, "Respondents" or the "Government") Return to the Petition (ECF No. 4).

For the reasons set forth below, the Court **GRANTS IN PART** the Petition on due process grounds.

**BACKGROUND**

Petitioner is a Venezuelan citizen who entered the United States on September 7, 2023. *See* ECF No. 1 at 2. He was granted humanitarian parole until June 12, 2025. *See id.* at 21. On July 6, 2026, ICE pulled Petitioner over while Petitioner was driving in Fort Myers, Florida, and arrested him. *See id.* at 2. ICE took him to the Otay Mesa Detention Facility, where he has remained since. *See id.* He received no notice or pre-detention hearing before being detained. *See id.* On July 29, DHS issued him a Notice to Appear charging him as inadmissible. *See id.* at 16. Petitioner is set to have a hearing before an immigration judge on August 19, 2026, *see* ECF No. 4, Ex. 1, meaning there is no final order of removal against Petitioner.

**LEGAL STANDARD**

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## DISCUSSION

### I. Jurisdiction

Respondents argue that this Court lacks jurisdiction under 8 U.S.C. § 1252(g). *See* ECF No. 4 at 1–3. 8 U.S.C. § 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Respondents argue that Petitioner's claims arise from DHS's decision to commence removal proceedings. *See* ECF No. 4 at 2. The Court disagrees.

Section 1252(g) should be read "narrowly" as to apply "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Ibarra-Perez v. United States*, No. 24-631, 2025 WL 2461663, at *6 (9th Cir. Aug. 27, 2025) (quoting *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482, 487 (1999)). Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Id.* at *7. Section 1252(g) does not bar due process claims. *Walters v. Reno*, 145 F.3d 1032, 1052–53 (9th Cir. 1998) (finding that the petitioners' objective was not to review the merits of their proceeding, but rather "to enforce their constitutional rights to due process in the context of those proceedings").

Here, Petitioner does not challenge the decision to commence removal proceedings or any act to adjudicate or execute a removal order. Rather, Petitioner is challenging his re-detention without notice or justification. *See* ECF No. 1 at 7–8. Petitioner is enforcing his "constitutional rights to due process in the context of the removal proceedings—*not* the legitimacy of the removal proceedings or any removal order." *Garcia v. Noem*, No. 25-CV-2180-DMS-MMP, 2025 WL 2549431, at *4 (S.D. Cal. Sept. 3, 2025); *see also* *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1160 (S.D. Cal. 2025). Therefore, § 1252(g) does not strip the Court of jurisdiction.

**II. Due Process**

Petitioner argues that the summary revocation of his release from detention without notice or a hearing violates the Due Process Clause. *See* ECF No. 1 at 3–7. Respondents argue that Petitioner's parole has expired and that he is subject to the mandatory detention provisions of § 1225(b)(2). *See* ECF No. 4 at 3–5. The Court concludes that Petitioner's current detention violates the Due Process Clause.

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (9th Cir. 2001). "[I]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). "Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." *Pinchi*, 792 F. Supp. 3d at 1032 (citing *Romero v. Kaiser*, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022)).

Respondents contend that as an "applicant for admission" under 8 U.S.C. § 1225 Petitioner is subject to mandatory detention and therefore his alleged constitutional

violations fail. *See* ECF No. 4 at 5–6. The Court disagrees. Petitioner has been granted humanitarian parole. *See* ECF No. 1 at 2. Petitioner is not a newly arrived noncitizen seeking admission at the border, as Petitioner has been in the United States since 2023. *See id.* Since his parole, Petitioner has complied with the law and conditions of his parole. *See id.* at 3. Petitioner is thus not an "applicant for admission" at the border and has a protected liberty interest in remaining out of custody. *See, e.g.*, *Pinchi*, 2025 WL 2084921, at *4 ("[Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria."); *Noori*, 2025 WL 2800149, at *10 ("Petitioner is not an 'arriving' noncitizen but one that has [been] present in our country for over a year. This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal."); *Matute v. Wofford*, No. 25-cv-1206-KES-SKO (HC), 2025 WL 2817795, at *5 (E.D. Cal. Oct. 3, 2025) (finding petitioner had a protected liberty interest in his release).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest.[1] *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court must apply the *Mathews* factors. *See Mathews*, 424 U.S. at 335. Courts must consider:

> (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the

[1] Contrary to Respondents' arguments otherwise, *see* ECF No. 4 at 3–4, courts have repeatedly held that liberty interests do not expire when parole does. *See Totskii v. LaRose*, No. 26-CV-1053-JES-JLB, 2026 WL 905331, at *2 (S.D. Cal. Apr. 2, 2026); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025); *Rodriguez Cabrera v. Mattos*, 808 F. Supp. 3d 1159, 1179 (D. Nev. 2025); *Omer G. G. v. Kaiser*, No. 1:25-CV-01471-KES-SAB (HC), 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025) ("[P]etitioner's liberty interest did not expire along with his parole.").

> Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.*

The Court finds that all three factors support a determination that the Government's re-detention of Petitioner without notification, reasoning, or an opportunity to be heard, denied Petitioner of his due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to his release in 2023. *See* ECF No. 1 at 2. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690; *see also Morrissey*, 408 U.S. 471 at 482 ("Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life.").

Second, the risk of an erroneous deprivation of such interest is high as Respondents revoked Petitioner's release from custody without providing Petitioner with notification, reasoning, or a hearing. *See* ECF No. 1 at 2. Since the government's initial determination in 2023 that Petitioner should be released because he posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). Indeed, after his release from custody, Petitioner has apparently complied with all conditions of release. *See* ECF No. 1 at 7. "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings. Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk[.]" *Saravia*, 280 F. Supp. 3d at 1176. "Where as here, 'the petitioner has not received any bond or custody hearing,' 'the risk of an erroneous deprivation of liberty is high' because neither the government nor

[Petitioner] has had an opportunity to determine whether there is any valid basis for [his] detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025)) (cleaned up).

Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is "low." *See Alvarenga Matute*, 807 F. Supp. 3d at 1130; *Pinchi*, 792 F. Supp. 3d at 1036; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").

Therefore, because Respondents detained Petitioner by revoking his release in violation of the Due Process Clause, his detention is unlawful. *See, e.g.*, *Monroy Martinez v. Lyons*, 2026 WL 1047937, at * 5 (S.D. Cal. Apr. 17, 2026) (granting a writ of habeas corpus on due process grounds where the petitioner's release on bond was revoked); *Navarro Sanchez v. LaRose*, 2025 WL 2770629, at *5 (S.D. Cal. Sept. 26, 2025) (granting a writ of habeas corpus releasing petitioner from custody to the conditions of her preexisting parole on due process grounds).

## CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** the Petition for Writ of Habeas Corpus (ECF No. 1), and **ORDERS** Respondents to immediately release Petitioner from custody subject to the conditions of his preexisting release. The Court **ORDERS**, prior to any re-detention of Petitioner, that Petitioner is entitled to notice of the reasons for revocation of his release on bond and a hearing before a neutral decision maker to determine whether detention is warranted. The government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight. *See, e.g.*, *Pinchi*, 792 F. Supp. 3d at 1038. The Parties are **ORDERED** to file a Joint Status Report by September 11, 2026, confirming that Petitioner has been released.

**IT IS SO ORDERED.**

Dated: September 2, 2026

Jill A. Otake
United States District Judge